IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EVERETT SPEARS, | ) | Civ. No. 12-00218 SOM/RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANT TANI |
| vs. | ) | DYDASCO'S MOTION FOR SUMMARY |
| | ) | JUDGMENT; ORDER TO SHOW CAUSE |
| THE STATE OF HAWAII, HAWAII | ) | WHY ACTION WITH RESPECT TO |
| DEPARTMENT OF PUBLIC SAFETY; | ) | THOMAS L. READ SHOULD NOT BE |
| TANI DYDASCO; THOMAS L. READ, | ) | DISMISSED |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT TANI DYDASCO'S MOTION
FOR SUMMARY JUDGMENT; ORDER TO SHOW CAUSE WHY ACTION
WITH RESPECT TO THOMAS L. READ SHOULD NOT BE DISMISSED**

**I.        INTRODUCTION.**

Plaintiff Everett Spears asserts that he was held in prison 73 days longer than he should have been. On April 24, 2012, Spears filed the Complaint in this matter, asserting claims under 42 U.S.C. § 1983 and under state law against the State of Hawaii Department of Public Safety and its employees, Tani Dydasco and Thomas L. Read.[1] *See* ECF No. 1. *See* ECF No. 1. On May 31, 2012, this court dismissed all of Spears's claims except for the damage claims asserted against Dydasco and Read in their individual capacities. *See* ECF No. 13.

---

[1]The Motion for Summary Judgment indicates that the Complaint misspelled Read's name as "Reed." ECF No. 29-3, PageID # 104.

Dydasco moves for summary judgment with respect to the remaining claims asserted against her.  ECF No. 29.  The court grants the motion.

The court also orders Spears to show cause why claims against Read should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## II.      SUMMARY JUDGMENT STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position concerning whether a material fact is genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify

and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "'significant

probative evidence tending to support the complaint'" must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

**III.     BACKGROUND.**

Spears claims to have been held in prison for 73 days more than he should have been.  But his claims against Dydasco are misplaced.

This court incorporates here the factual history underlying Spears's overdetention claims set forth by the State of Hawaii's Intermediate Court of Appeals ("ICA"):

> On April 29, 2000, Spears was arrested for burglary in the first degree and violation of order of protection.  On May 15, 2000, Plaintiff-Appellee State of Hawai`i (State) charged Spears in Cr. No. 00-1-0206 (Case 1) with five counts.  On July 3, 2000, while in custody for Case 1, Spears was indicted on two counts in Cr. No. 00-1-0333 (Case 2), which was unrelated to Case 1.
>
> On November 14, 2000, Spears pleaded no contest to four charges: in Case 1--the reduced charge of criminal trespass in the first degree in violation of Hawaii Revised Statutes (HRS) § 708-813 (Supp. 2011), criminal property damage in the fourth degree in violation of HRS § 708-823 (1993), and harassment in violation of HRS § 711-1106 (Supp. 2008) and, in Case 2-assault in the second degree in violation of HRS § 707-710 (1993).
>
> . . . For Case 1, the Circuit Court sentenced Spears as follows: one-year jail sentence for Count One, thirty-day jail sentence for Count Two, and thirty-day jail sentence for Count Five.  For Count One of Case 2, the Circuit Court sentenced Spears to five years probation and one-year jail sentence.  The Circuit Court ordered that Spears would receive credit for time served and that all sentences would run concurrently.

*State v. Spears*, 2013 WL 257128, *1 (Haw. Ct. App. 2013); *see also* Judgment Guilty Conviction and Probation Sentence in Cases 1 and 2, Jan. 11, 2001, ECF No. 31-8.

On April 27, 2001, in response to the motion for clarification of Spears's sentence, Judge Joseph E. Cardoza of the state trial court filed a Stipulated Order re: Jail Confinement in both Case 1 and Case 2. In relevant part, it stated, "the Parties and the Court having reviewed the file herein, hereby agree and stipulate that the Defendant shall receive credit for time served since he was taken into custody on April 29, 2000 at 2330 hours, and he shall be released from custody on April 29, 2001, at 2330." ECF No. 31-16, PageID # 239. It further stated, "You are committed to the custody of the Director of the Department of Public Safety for a period of ONE (1) year of jail confinement in [Case 2] Count 1, credit for time served *nunc pro tunc* to April 29, 2000 at 2330 hours." *Id.*

Spears was released from custody on April 29, 2001. *Spears*, 2013 WL 257128 at *2.

On May 8, 2001, Judge Cardoza filed an Amended Stipulated Order re: Jail Confinement. In addition to stating that Spears was to receive credit for time served since he was taken into custody on April 29, 2001, it modified the original stipulated order by stating:

> You are committed to the custody of the
> Director of the Department of Public Safety

6

> for a period of ONE (1) year of jail
> confinement in [Case 2] Count 1 [credit for
> time served nunc pro tunc to April 29, 2000
> at 2330 hours], and for a period of ONE (1)
> year of jail confinement in [Case 1] Count 1;
> 30 days in Counts 2 and 5; all terms to run
> concurrently with each count and each
> criminal number. Mittimus to issue forthwith
> with credit for time served.

ECF No. 31-3, PageID # 202.

At the time the state trial judge filed the stipulated orders with respect to Spears's presentence credits, the Hawaii Supreme Court had already decided *State v. March*, 94 Haw. 250, 11 P.3d 1094 (2000). Noting that "[p]resentence incarceration credit is governed by statute, *see* HRS § 706-671 (1993)," *March* held, "a sentence that credits Defendant with the time served for an unrelated offense is illegal because the sentencing court is not authorized by chapter 706 to grant such a credit." *Id.* at 253, 255, 11 P.3d at 1097, 1099. There is no dispute that Case 1 and Case 2 were unrelated. Thus, the stipulated orders running presentence credits concurrently did not comport with *March* and gave Spears 73 days of credit in Case 2 that *March* did not countenance.

On February 18, 2003, the State of Hawaii filed a motion seeking an arrest warrant based on Spears's alleged violations of conditions of probation with respect to Case 2. *Spears*, 2013 WL 257128 at *2. The arrest warrant was not served until May 16, 2006, which was more than three years later. *Id.*

Spears admitted to having violated the terms and conditions of probation. Probation was revoked, and Spears was resentenced in Case 2 to 5 years of imprisonment, with credit for time served. *Id.*; *see also* Order of Resentencing Revocation of Probation in Case 2, July 13, 2006, ECF No. 31-9.

On or about July 3, 2008, Spears wrote to Scott Jibo, the Hawaii Department of Public Safety Contract Monitor, claiming that Spears's calculated release date of July 24, 2010, was incorrect. Spears said that he should have received more credit for time served and that his release date should be May 16, 2010. *See* ECF No. 31-10, PageID # 223. Spears may have himself miscalculated. If Spears was relying on the earlier stipulated orders and seeking 73 days of credit, his release date would have been May 12, 2010.

On or about September 5, 2008, Jeanette Baltero, another Contract Monitor for the Hawaii Department of Public Safety, responded to Spears's letter of July 3, 2008. Baltero stated that Spears had received a total of 352 days of credit such that his maximum release date was July 24, 2010. *See* ECF No. 31-11, PageID # 224. The Record of Presentence Credits attached to that letter indicates that Spears was given 292 days credit for the period from July 12, 2000, to April 29, 2001, which is 73 days less than 365 days. *Id.*, PageID # 225.

On or about November 28, 2008, Raynette Ruiz again calculated Spears's maximum release date as July 24, 2010. ECF No. 30-8, PageID # 157; Sentence Calculation Form, ECF No. 31-12, PageID # 226.

Apparently, Spears asked the Department of Public Safety to review the calculation of the release date of July 24, 2010. *See* Defendant Tani Dydasco's Answers to Request for Answers to Interrogatories Nos. 11 and 13, ECF No. 108-4, PageID #s 766-67. Dydasco says that, in December 2009, after the Department of Public Safety received Spears's request, she audited Spears's file, verifying that his release date should have been July 24, 2010. Dydasco wrote her name and initials on Ruiz's Sentencing Calculation Form. *See id.;* Declaration of Tani Dydasco ¶ 9, ECF No. 30-8, PageID # 157; Sentence Calculation Form, ECF No. 31-12, PageID # 226. Nothing in the record indicates that Dydasco had calculated Spears's release date before December 2009. The Department of Public Safety therefore had been telling Spears that his release date would be July 24, 2010, for well over a year before Dydasco confirmed that release date.

On January 25, 2010, the state trial court received a letter from Spears that asked the court to clarify his presentence credit for Case 2. *Spears*, 2013 WL 257128 at *2; January 11, 2010, letter from Everett Spears to Judge S.

9

Raffetto, available as pages 293-94 of 792 of Record on Appeal

("ROA") (filed Oct. 10, 2010) through

https://jimspss1.courts.state.hi.us/JEFS/ (click on "View

Documents and then input 30690 under "Case Search") (last visited

November 3, 2017).[2]  On January 26, 2010, the state trial court

provided notice to the State of Hawaii of the court's receipt of

the letter; the state court otherwise took no action with respect

to the letter.  *See* Notice of Ex Parte Communication, ROA page

677 of 792.

On February 5, 2010, Spears wrote to the Office of the

Clerk, Second Judicial Circuit, asking the clerk to correct the

presentence information provided to the Department of Public

Safety, including the credit at issue in this case.  February 5,

2010, letter from Everett Spears to Office of the Clerk, ROA page

685 of 792.

On March 1, 2010, Spears filed a Motion to Withdraw

Guilty Plea in both Case 1 and Case 2, arguing that the State of

Hawaii had not honored his plea agreement.  *Spears*, 2013 WL

257128 at *2.  Spears argued that he was being deprived of 73

_____

[2]The court takes judicial notice of the related documents
and transcripts on appeal filed with the ICA, as this court may
take judicial notice of matters of public record such as
documents filed with courts "both within and without the federal
judicial system, if those proceedings have a direct relation to
the matters at issue."  *United States ex rel. Robinson Rancheria
Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.
1992).

days of pretrial credit in Case 2. Motion to Withdraw Guilty

Plea, ROA pages 682 of 792.

In early 2010, Spears also wrote to the Department of

Public Safety, arguing that his release date should be in May

2010. On March 4, 2010, Dydasco and Read responded to that

letter. The response rejected Spears's claim for the additional

73 days of credit. *See* ECF No. 31-15, PageID # 234. The letter

to Spears noted that, under section 706-671 of Hawaii Revised

Statutes and case law interpreting it, a defendant had no right

to credit for time spent in prison between arrest and sentencing

as a consequence of a different charge or conviction. *Id.* The

letter stated:

> Your presentence credit for [Case 2] at the
> time of your 11/1/01 sentencing was computed
> as 185 days. When you were released on
> 4/29/01, you had not served the full 1 year
> sentence that was imposed for the charge in
> that case. Your expected end date for that
> case was 7/9/01. On 4/27/01, a Stipulated
> Order re Jail Confinement was filed, in which
> the Judge granted credit for [Case 2] . . .
> nunc pro tunc to 4/29/00. . . . Now that you
> have been re-sentenced to an open term in
> [Case 2], it is the Department of Public
> Safety's (PSD) responsibility to compute your
> pre-sentence credit. PSD is bound to follow
> HRS§706-671, which requires PSD to compute
> all detention that follows the arrest for the
> charge for which the defendant is sentenced.
> In review of our records, we have determined
> that you had not served the full 1 year in
> 2001 for [Case 2]. . . . Pre-sentence credit
> is statutory and cannot be nunc pro tunc. We
> have drafted a letter to the Judge,
> requesting guidance in regards to the
> stipulated order that was filed on 4/27/01.

> Until we receive documentation, or an order
> to the contrary, your total pre-sentence
> credit for [Case 2] will remain at 352 days,
> with a maximum expiration date of 7/24/2010.

*Id.*, PageID # 234-35.

On March 4, 2010, Read sent Judge Cardoza a separate letter regarding the Stipulated Order re: Jail Confinement that had been filed on April 27, 2001.[3] The letter noted that, for Case 2, the Department of Public Safety could only document 292 days of credit, not the 365 days that Spears was claiming, a difference of 73 days:

> The stipulated order was interpreted to grant
> him credit that he received for another
> charge. The Department of Public Safety
> (PSD) is bound to follow H.R.S. §706-671,
> which requires PSD to compute all detention
> that follows the arrest for the charge for
> which the defendant is sentenced. Pre-
> sentence credit is awarded pursuant to
> statutory authority, PSD policy, and Hawaii
> case law, and cannot be awarded for time
> served for another case, or for time not in
> custody. Based on the foregoing, PSD is not
> inclined to grant the defendant credit [for
> the 73 days] on this 2006 re-sentencing. To
> do so would be directly violative of statute,

---

[3]In a June 16, 2017, filing with the court, ECF No. 91-7, Spears attached the signature page from the letter to him, ECF No. 31-15 (signed by Dydasco and Read), to the letter addressed to Judge Cardoza, ECF No. 31-16 (signed by Read). At the hearing on the motion, Spears agreed that only Read had signed the March 4, 2010, letter to Judge Cardoza. Thus, Spears's argument that Dydasco "wrote an ex parte letter to the Sentencing Judge in March 2010 [indicating] that the prior 2001 sentencing Orders . . . would not be followed because she deemed them contrary to [Department of Public Safety] regulations," ECF No. 34, PageID # 319, is unsupported by the record.

> policy and case law, specifically *State of*
> *Hawaii v. Yamasaki*, 94 Haw. 250, (2000).
>
> . . . .
>
> [A]bsent any guidance or an order to the
> contrary, PSD staff will follow both its own
> policy and state statute by applying the
> presentence credits that are applicable . . .
> .

ECF No. 31-16, PageID #s 236-37.

On April 20, 2010, the state trial court held a hearing on Spears's motion to withdraw guilty plea. According to the ICA, the state trial judge denied the motion without prejudice at that hearing, stating that the motion was untimely but noting that the motion could be filed under Rule 40 of the Hawaii Rules of Penal Procedure. *Spears*, 2013 WL 257128 at *3. Rule 40 of the Hawaii Rules of Penal Procedure governs petitions for post-conviction relief. The docket sheets in both Case 1 and Case 2, contrary to the ICA's description, suggest that the denial initially announced on April 20, 2010, did not take effect and that instead, later proceedings on the motion to withdraw guilty plea occurred. *See* Docket Sheets, available through eCourt KōKua on the Hawaii State Judiciary website, www.courts.state.hi.us (input CaseID 2PC001000206 and 2PC001000333 under "Case Search" after entering eCourt KōKua) (last visited October 19, 2017).

On Page 8 of the transcript of the April 20, 2010, hearing, which was filed in the ICA on March 10, 2011,[4] Judge Joseph E. Cardoza did indeed say, "So I am going to deny your motion to withdraw your plea without prejudice to your ability to file a Rule 40 petition." After further argument, Judge Cardoza noted that *State v. March*, a decision by the Hawaii Supreme Court, prohibited the awarding of credit for time defendants were not in custody. *Id.* at 25. The judge then stated that he would have to look at the stipulations to see whether they were affected by *March*. *Id.* Judge Cardoza explained to Spears, "I'm saying you can't get credit because you weren't in custody. That's what I'm saying." *Id.* at 26. The court then continued the hearing to later in the day. But when the case was recalled, the court was unable to get Spears back on the telephone and therefore recessed until the court could coordinate with his prison facility. *Id.* at 27-28.

On May 6, 2010, Judge Cardoza held a further hearing on the motion to withdraw guilty plea, suggesting that he may not have thought proceedings on that motion had concluded on April 20, 2010. *See* Transcript of Proceedings on Appeal (May 6, 2010) at 3 (filed in the ICA on March 10, 2011) (calling the case for

---

[4]All documents filed in the ICA concerning Spears's appeal are available through https://jimspss1.courts.state.hi.us/JEFS/ (click on "View Documents and then input 30690 under "Case Search").

further hearing on the motion to withdraw guilty plea).  Judge
Cardoza stated at the hearing on May 6, 2010:

> The Court recognizes that it was--there was a
> period of time in the State of Hawaii when
> defendants would enter into stipulated orders
> allowing for credit for time served nunc pro
> tunc even if the defendant was not actually
> in custody in the case.  And this is one of
> those situations.
>
> However, the Department of Public Safety in
> light of the way that the law has developed
> and the law--the way the law has developed is
> that you actually have to be in custody in
> order to get credit for that time.
>
> And nunc pro tunc orders that credit time
> that was not actually served will not be
> recognized by the Department of Public
> Safety.  So, therein, lies the problem for
> Mr. Spears.  Because the Department of Public
> Safety is not going to recognize credit for
> time served that doesn't reflect time served
> consistent with case law as has developed in
> the State of Hawaii.

*Id.* at 8-9.  The judge then stated that the proper way to attack
the issue was for Spears to file a Rule 40 motion as opposed to a
motion to withdraw plea.  *Id.* at 10.  Spears then asked for
counsel.  Judge Cardoza agreed to appoint counsel for Spears and
continued the matter.  *Id.* at 12, 16.

At the hearing on May 6, 2010, Spears told Judge
Cardoza that he was supposed to be released about a week later,
on May 12, 2010.  *Id.*  Judge Cardoza responded by telling Spears
that he was giving Spears time to get counsel and that, given the
court's schedule, the earliest date that was open that would

allow counsel's input with respect to the motion to withdraw guilty plea was June 8, 2010. *Id.* at 13. It was with the knowledge that appointing counsel for Spears would mean he would not be released until well after May 12, 2010, that Judge Cardoza delayed further argument about whether the Department of Public Safety was required to give effect to the court's previous order giving Spears 73 more days of credit than the Department of Public Safety had calculated in light of *March*.

On May 10, 2010, the court appointed Matthew Nardi as Spears's counsel. *See* Docket Sheet in Case 1.

On May 24, 2010, Spears appealed what he thought was the oral denial of his motion to withdraw guilty plea on April 20, 2010. *Spears*, 2013 WL 257128 at *3; Notice of Appeal, ROA page 308 of 792.

On June 8, 2010, Judge Cardoza held a further hearing on the motion to withdraw guilty plea. *See* Transcript of Proceedings on Appeal (June 8, 2010) at 2 (filed in the ICA on November 9, 2011) (calling the case for further hearing on the motion to withdraw guilty plea). Once the case was called and attorneys for the State and Spears had made their appearances, Judge Cardoza noted that the court was unable to get Spears on the telephone from his prison facility. *Id.* at 2. He then stated:

> I think we're all aware that any further
> delay is prejudicing Mr. Spears because he's

claiming that he should have already been let
out.  I think none of the facts are in
dispute.  The only things in dispute is why
the DPS should be allowed to disregard a
court order.

*Id.* at 3.  He further stated to the attorneys:

Here's my concern.  We have Mr. Spears
arguing that he shouldn't be in custody and
there's an order that I never should have
issued in the first place in place that's
incorrect under the facts and under the law.

So, I'm willing to hear more arguments
on this and allow you to present any other
briefing that you want to, but I think I have
to do what State versus March tells me to do,
and that is I have to vacate the order.

*Id.* at 8.

Judge Cardoza added, "So, at this time, I'm going to

order that order giving him credit for time that he didn't

actually serve be vacated."  *Id.* at 9.  He then stated, "I won't

deny the . . . motion to withdraw.  What I'll do is I'll give you

another hearing date on that so you can brief it.  The bottom

line is I never should have issued this order in the first place

and that's what I have to accept.  I was wrong."  *Id.* at 11.  The

hearing on the motion to withdraw guilty plea was then continued

to June 24, 2010.[5]

_____

[5]The parties did not brief and this court does not here
address whether, in 2010, Judge Cardoza was actually empowered to
vacate his order entered nearly a decade earlier, thereby
requiring Spears to serve 73 more days in custody than Spears,
the State, and the trial judge had contemplated in 2001.  At the
hearing before this court on October 30, 2017, this court said
that this court would not have considered itself to have had such

17

On June 24, 2010, Judge Cardoza called a further
hearing on Spears's motion to withdraw guilty plea.  When the
court called Spears's prison facility, the court was told that
Spears had been transferred to a different facility.  The court
then continued the matter to June 29, 2010.  *See* Transcript of
Proceedings on Appeal (June 24, 2010) at 3-4 (filed in the ICA on
November 3, 2010).

At the end of the day on June 24, 2010, Judge Cardoza
issued a written order reiterating his oral ruling of June 8,
2010.  He vacated the stipulated orders giving Spears the 73 days
of credit at issue.  *See Sua Sponte* Order Rescinding Stipulated
Order re: Jail Confinement, Filed April 27, 2001, ECF No. 31-4.
His new order stated:

> On June 8, 2010, a further hearing on
> Defendant EVERETT SPEARS' ("Defendant")
> motion for writ and motion to withdraw guilty
> plea was held in [Case 1].  Matthew Nardi,
> Esq. represented Defendant.  During said
> hearing, the Court observed that the
> stipulated order signed by this Court

---

authority even if this court had granted credit illegally.
However, this court expressly recognized that restrictions it
thought applicable to its own actions might not apply to other
courts.  At this point, this court has no reason to explore that
matter further.  What is now before this court are claims against
Dydasco.  Spears does not establish a clearly established
constitutional right to the credit.  *See generally Kernan v.
Cuero*, S. Ct., 2017 WL 5076049 (Nov. 6, 2017) (noting in the
habeas context that it was not clearly established that specific
performance of a plea agreement was constitutionally required
such that the government could not amend charges following a
guilty plea while allowing the defendant to withdraw an earlier
guilty plea made pursuant to the plea agreement).

granting Defendant credit for time served in
[Case 2] for time served only in [Case 1] was
illegal and ordered that said order be
rescinded.  The purpose of this order is to
reduce to writing the Court's oral order of
June 8, 2010.

With the exception of the fact that the
same defendant was charged in both of the
above cases, there is no dispute that the
charges in the two cases are unrelated.  On
April 27, 2001, the parties in the above
matters entered into a "stipulated order re:
jail confinement" that provided that
Defendant be "committed to the custody of the
Director of the Department of Public Safety
for a period of one (1) year confinement in
[Case 2] credit for time served *nunc pro tunc*
to April 29, 2000 at 2330 hours."  On May 8,
2001, the parties entered into an "amended
stipulated order re: jail confinement" that
did not change the substance of the
stipulated order filed April 27, 2001.

It is undisputed that Defendant was not
in custody in [Case 2] from April 29, 2000
through July 11, 2000.  Indeed, in [Case 2],
Defendant was charged by indictment filed on
July 3, 2000.  He was arrested in [Case 2] on
July 12, 2000.  During the period of April
29, 2000 through July 11, 2000, Defendant was
in custody in [Case 1] only.  Thus, pursuant
to the stipulated orders filed April 27, 2001
and May 8, 2001, Defendant was given credit
in [Case 2] for time served only in [Case 1].

Although a sentencing court is given
broad discretion in sentencing defendants,
the sentence imposed must be authorized by
statute.  *State v. March*, 94 Hawai'i 250,
254, 11 P.3d 1094, 1098 (2000).  Hawai'i
Revised Statutes ("HRS") § 706-600 expressly
precludes the imposition of a sentence not
authorized by chapter 706.  *Id.*  HRS
§ 706-671 not only authorizes, but also
mandates, that a trial court credit a
defendant for any time served in connection
with the same offense.  HRS § 706-671,

however, does not authorize courts to credit a defendant with time served for another offense. *Id.* at 254-55, 11 P.3d 1098-99. A sentence that credits a defendant with time served for an unrelated offense is illegal because the sentencing court is not authorized by Chapter 706 to grant such a credit. *Id.* at 255, 11 P.3d at 1099.

Here, by stipulated orders filed April 27, 2001 and May 8, 2001, Defendant was given credit in [Case 2] for time he had served in [Case 1], an unrelated case. There is no dispute that Defendant was not in custody in [Case 2] during the period of April 29, 2000 through July 11, 2000. Thus, the April 27, 2001 and May 8, 2001 stipulated orders that gave credit to Defendant for time he had not actually served in [Case 2] were illegal and should be rescinded. Now, therefore,

IT IS HEREBY ORDERED that the stipulated order re: jail confinement, filed in the above matters on April 27, 2001, and the amended stipulated order re: jail confinement, filed in the above matters on May 8, 2001, are rescinded. Nothing in this order shall preclude Defendant from pursuing the motions he has already filed or may file in the above matters. Any such motions will be heard and disposed of by separate order.

ECF No. 31-4.

On June 29, 2010, Judge Cardoza held a continued hearing on Spears's motion to withdraw guilty plea. Spears and his attorney participated in the hearing. *See* Transcript of Proceedings on Appeal (June 29, 2010) at 2 (filed in the ICA on November 9, 2011). Spears's attorney argued that Spears should be released immediately because the judge lacked the power to rescind the stipulated orders. *Id.* at 4-5. After a discussion

of the illegality of the credits he had earlier ordered, Judge Cardoza examined the motion to withdraw guilty plea, noting that there might be issues as to what had happened that required an evidentiary hearing. *Id.* at 11. He ended the hearing by stating that he would find a hearing date and contact the parties. *Id.* at 31.

On August 23, 2010, Spears appealed the order of June 24, 2010, arguing that the state court and the State of Hawaii had breached his plea agreement and that the state court had violated his due process rights by rescinding the agreed-upon credit. *See* ECF No. 31-6, PageID # 212.

On April 24, 2012, Spears filed the Complaint in this matter. *See* ECF No. 1.

On January 23, 2013, the ICA concluded that it lacked jurisdiction because the order of June 24, 2010, was not a final appealable order. *See Spears*, 2013 WL 257128 at *5.

On October 21, 2013, Magistrate Judge Richard L. Puglisi granted Spears's motion to stay this case in part. This stay, which was over the State's objection, was to allow the state court to decide Spears's motion to withdraw guilty plea. *See* ECF No. 50. The case was not reopened until June 2017. *See* ECF Nos. 88, 93.

According to the docket in Case 2, on October 24, 2013, the state trial court held a proceeding at which it set a hearing

date of April 3, 2014, for a Rule 40 motion that was to be filed by February 14, 2014, as a special prisoner proceeding, or "SPP." *See* Docket Sheet in Case 1.

Spears filed a Rule 40 motion on June 25, 2014. *See* ECF No. 59-2 (Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody in SPP No. 14-1-0006(3)). According to the docket sheet for that case, the petition was denied on January 26, 2016. Amended Findings of Fact, Conclusions of Law, and Judgment Denying Petition were filed on February 29, 2016. Spears appealed, but the appeal was dismissed on November 9, 2016. *See* http://hoohiki.courts.hawaii.gov/ (enter 2PR141000006 under Case ID) (last visited October 20, 2017).

Spears says that he was ultimately incarcerated for 73 more days than he should have been. *See* Declaration of Everett Spears ¶ 12, ECF No. 33-1, PageID # 252.

IV.     **ANALYSIS.**

Spears initially asserted six claims in his Complaint, which this court summarized in its earlier Order:

> First, Spears asserts a claim against all Defendants under 42 U.S.C. § 1983 for "unlawful imprisonment" in violation of his Eighth Amendment rights. Id. ¶¶ 17-23. Second, Spears asserts a § 1983 claim against all Defendants for violation of his Fourteenth Amendment due process and equal protection rights. Id. ¶¶ 24-26. Third, Spears asserts a § 1983 claim against DPS and Defendants John and Jane Does 1-10 and "their

respective departments" for "negligent failure to supervise" in violation of his Eighth and Fourteenth Amendment rights. Id. ¶¶ 27-30. Fourth, Spears asserts a § 1983 claim against all Defendants for "deliberate indifference" in violation of his Eighth and Fourteenth Amendment rights. Id. ¶¶ 31-34. Spears's fifth and sixth claims are asserted against all Defendants for state tort claims of false arrest and intentional infliction of emotional distress.

Order Dismissing with Prejudice § 1983 and State Tort Claims For Money Damages Against the State of Hawaii, Department of Public Safety, and the Individuals in Their Official Capacities, as Well as All § 1983 Claims Based on Alleged Violations of State Law; Order Dismissing Without Prejudice the Prospective Injunctive Relief Claims under § 1983, ECF No. 13, PageID # 40. Although the Complaint asserts a state-law claim that Spears calls a "false arrest" claim, paragraph 35 of the Complaint makes it clear that Spears is actually asserting a false imprisonment claim. *See* ECF No. 1, PageID # 11.

At this point, given the court's earlier order, only the individual capacity § 1983 claims (the First, Second, and Fourth Causes of Action) and state-law claims for false imprisonment and intentional infliction of emotional distress (the Fifth and Sixth Causes of Action) against Dydasco and Read remain for adjudication. Id., PageID # 47. The Third Cause of Action is a negligent failure to supervise claim. However, there is no allegation that Dydasco was supervising anyone. Instead,

the facts establish that Spears's claims against Dydasco are entirely based on her 2009 confirmation of Spears's release date and her letter of March 4, 2010, to Spears responding to Spears's assertion that he should be released in May 2010 and also informing Spears that the Department of Public Safety would be seeking guidance from Judge Cardoza on whether Spears should receive the 73 days of credit.

This is not the first case this court has had addressing overdetention of state prisoners. *See, e.g., Beckstrand v. Read*, 2012 WL 4490727 (Sept. 26, 2012), *rev'd,* 563 Fed. App'x 533, 534 (9th Cir. 2014), *aff'd after remand,* 680 F. App'x 609, 610 (9th Cir. 2017). While this court recognizes the importance of the issue and is committed to giving the issue serious attention, this court finds misplaced and unjustified Spears's focus on Dydasco as liable to him for overdetention.

**A.  Summary Judgment is Granted in Favor of Dydasco With Respect to the § 1983 Claims.**

Section 1983, under which the remaining federal claims are brought, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

24

equity, or other proper proceeding for
redress.

28 U.S.C. § 1983.  A § 1983 claimant must establish that: (1) a
person acting under the color of state law committed the conduct
at issue, and (2) the conduct deprived the claimant of some
right, privilege or immunity protected by the Constitution or
laws of the United States.  *Leer v. Murphy*, 844 F. 2d 628, 632-33
(9th Cir. 1988); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074
(9th Cir. 2001) ("Section 1983 creates a private right of action
against individuals who, acting under color of state law, violate
federal constitutional or statutory rights.").

Dydasco moves for summary judgment with respect to the
§ 1983 claims on the grounds that her letter to Spears "correctly
set out the application of HRS § 706-671 to Plaintiff's sentences
and therefore his correct release date.  Defendant correctly
calculated Plaintiff's sentence and therefore his correct release
date.  Defendant correctly calculated Plaintiff's sentence, and
he was released on time."  Motion at 12.  As a result, Dydasco
argues that she is entitled to both absolute and qualified
immunity.  Motion at 12-16.

### 1.  Dydasco is Not Entitled To Absolute Immunity With Respect to Spears's § 1983 claims.

Citing *Engebretson v. Mahoney*, 724 F.3d 1034 (9th Cir.
2013), Dydasco argues that she is entitled to absolute immunity
with respect to Spears's § 1983 claims.  The court is

unpersuaded.  *Engebretson* held that "prison officials charged
with executing facially valid court orders enjoy absolute
immunity from § 1983 liability for conduct prescribed by those
orders."  *Id.* at 1039.  An absolutely immune defendant who relied
on Judge Cardoza's order of June 8, 2010, which vacated the
stipulated orders, would not be liable under § 1983 for any part
of the alleged 73-day overdetention occurring after that date.
Moreover, nothing in the record establishes that Dydasco did or
could have acted in compliance with any court order.  Instead,
the record reflects that all of Dydasco's actions occurred before
the order of June 8, 2010.  Dydasco therefore fails to establish
the bases for absolute immunity under *Engebretson*.  Of course, to
the extent Spears is seeking to hold Dydasco financially
responsible for the actions of others who relied on the order of
June 8, 2010, Spears does not show that Dydasco caused any
overdetention after that date.

### 2.    Dydasco Has Qualified Immunity With Respect to Spears's § 1983 claims.

The court turns now to the issue of qualified immunity.
"[G]overnment officials performing discretionary functions [are
entitled to] qualified immunity, shielding them from civil
damages liability as long as their actions could reasonably have
been thought consistent with the rights they are alleged to have
violated."  *Anderson v. Creighton*, 83 U.S. 635, 638 (1987)
(citations omitted).

The Supreme Court has set forth a two-pronged analysis for determining whether qualified immunity applies. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). In one prong, the court considers whether the facts, "[t]aken in the light most favorable to the party asserting the injury[,] . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Under this prong, this court must decide whether the facts make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232.

Under the other prong, the court examines whether the right allegedly violated was clearly established at the time of the violation. *Saucier*, 533 U.S. at 201; *Scott v. Harris*, 550 U.S. 372, 377 (2007). The "clearly established" prong requires a determination of whether the right in question was clearly established in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 194; *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004).

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation marks, alterations, and citations omitted). The crucial question is whether Dydasco could have reasonably (even if erroneously) believed that her conduct did not violate Spears's rights. *Devereaux*, 263 F.3d at 1074. Whether a constitutional right was "clearly established . . . is a question of law that only a judge can decide." *Morales v. Fry*, __ F.3d __, 2017 WL 4582732, at *3 (9ᵗʰ Cir. Oct. 16, 2017).

This court may analyze the two prongs in either order. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

When adjudicating a motion to dismiss based on qualified immunity, the court examines the facts as alleged in the complaint. However, on a motion for summary judgment such as this, the plaintiff can no longer rest on the pleadings and the court instead looks at the evidence before it in the light most favorable to the plaintiff. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see also Stonecipher v. Valles*, 759 F.3d 1134, 1148 n.9 (10ᵗʰ Cir. 2014) ("[t]he denial of qualified immunity protection at the motion to dismiss stage does not bind the court at the summary judgment stage. The legally relevant factors for

a qualified immunity decision will be different at the summary judgment stage--no longer can the plaintiffs rest on facts as alleged in the pleadings."); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) ("Government officials are not entitled to qualified immunity if (1) the facts taken in the light most favorable to the party asserting the injury show that the defendants' conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." (quotation marks and alterations omitted)).

Thus, in *Jones v. Las Vegas Metropolitan Police Department*, __ F.3d. __, 2017 WL 4700317 (9th Cir. Oct. 20, 2017), the Ninth Circuit on a summary judgment motion examined whether officers had qualified immunity with respect to their use of a taser by examining whether the actual facts demonstrated a Fourth Amendment violation and whether that right was clearly established.

The facts, viewed in the light most favorable to Spears, do not demonstrate that Dydasco violated Spears's constitutional rights. Spears specifically relies on an Eighth Amendment right to be free of unlawful imprisonment, Fourth and Fourteenth Amendment rights to due process and equal protection, and Eighth Amendment and Fourteenth Amendment rights to be free of deliberate indifference. The record does not show that any "clearly established" constitutional right was violated.

The undisputed facts show that the issue of Spears's entitlement to the 73 days credit arose as early as 2008. In July 2008, Spears wrote to Scott Jibo of the Department of Public Safety, claiming that the calculated release date of July 24, 2010, was incorrect and that the release date should be May 16, 2010. *See* ECF No. 31-10, PageID # 223. Jeanette Balero of the Department of Public Safety responded in September 2008, telling Spears that the release date of July 24, 2010, had been properly calculated. *See* ECF No. 31-11, PageID # 224. In November 2008, Raynett Ruiz also calculated Spears's maximum release date as July 24, 2010. In December 2009, Dydasco, at Spears's request, audited Spears's file, determining, consistent with the previous calculations, that Spears's release date should be July 24, 2010. *See* ECF No. 31-12, PageID # 226.

On March 1, 2010, Spears filed a motion to withdraw guilty plea in state court, arguing that he was being deprived of 73 days of pretrial credit.

On March 4, 2010, Dydasco and Read responded to a letter Spears had sent to the Department of Public Safety the previous month, reiterating to Spears that, notwithstanding the stipulated orders, Hawaii law prohibited pretrial credit for days a defendant had not served in prison. The letter informed Spears that the Department of Public Safety would be sending Judge Cardoza a letter requesting guidance with respect to the

stipulated orders.  *See* ECF No. 31-15, PageID #s 234-35.  On the
same day, Read (but not Dydasco) sent Judge Cardoza such a
letter.  *See* ECF No. 31-16, PageID #s 236-37.

On April 20, 2010, at the hearing on Spears's motion to
withdraw guilty plea, Judge Cardoza noted that *State v. March*
prohibited giving defendants credit for time they were not in
custody.  *See* Transcript at 25 (Apr. 20, 2010).  In other words,
prior to the date Spears was claiming that he should have been
let out, Judge Cardoza was agreeing in principle with the
Department of Public Safety's position that defendants were not
supposed to be given credit for time they were not in custody.
Further proceedings occurred, including a hearing on May 6, 2010,
at which Spears asked for an attorney to represent him with
respect to the pretrial credit issue.  Judge Cardoza granted that
request.  Spears asked the judge whether the delay caused by the
appointment of an attorney would mean that he would not be
released until July 24, 2010.  Judge Cardoza responded, "Well,
we'll sort that out at a hearing where you have counsel.  But
we're going to have to give you enough time to get all of that
done."  Transcript at 12-13 (May 6, 2010).

On June 8, 2010, Judge Cardoza held another hearing on
the motion to withdraw guilty plea.  At that hearing, Judge
Cardoza stated that, in light of Hawaii law, he had erred in
issuing the stipulated orders.  He then vacated those orders.

31

*See* Transcript at 8-9 (June 8, 2010). On June 24, 2010, he filed a written order that reiterated the oral ruling vacating the stipulated orders. *See* ECF No. 31-4. That order has not been reversed or vacated on appeal.

Spears says that Dydasco "*ignored* the *valid 2001 Court Orders* and decided on her own to follow a different sentencing calculation which violated Hawaii Rules and Hawaii law." Opp'n at 9, ECF No. 34, PageID # 321. Spears further argues that Dydasco "knew that these rights are being violated as Plaintiff informed her of the miscalculations" and his allegedly correct release date. *Id.* However, the record establishes that Dydasco only audited Spears's pretrial credits, which had already been reviewed by others in the Department of Public Safety, and that she wrote Spears a letter in response to his claim concerning the 73 days credit. It was Read who asked Judge Cardoza for guidance as to whether Spears should get the 73 days of pretrial credit for time he was not in custody with respect to Case 2.

Spears does not establish that any constitutional right was "clearly established" such that it barred Department of Public Safety personnel from asking the judge for guidance as to whether it should enforce an order that improperly provided pretrial credit to an inmate in violation of Hawaii law. Nor does Spears demonstrate any "clearly established" constitutional right prohibiting a person in Dydasco's position from determining

that a court order had improperly granted pretrial credit in violation of Hawaii law, leading someone else to ask the judge for guidance as to whether the Department of Public Safety should follow the law or a court order. Dydasco acted reasonably in questioning the court order in light of Hawaii law, even if that caused others in her department to ask the judge for guidance.

Spears's relies on *Beckstrand v. Read*, 2012 WL 4490727 (D. Haw. Sept. 26, 2012). That citation is unavailing. In *Beckstrand*, Department of Public Safety officials had assumed they were "empowered to correct a judge's purported error" and unilaterally undid a judge's order to "impose what DPS employees deemed to be a correct application of *March* on Beckstrand." *Id.* at *8. Concluding that "Beckstrand clearly had a right to be free of decisions by prison officials to correct allegedly erroneous judicial decisions," this court ruled that the Department of Public Safety officials in that case had failed to show they had qualified immunity with respect to Beckstrand's claimed Fourth Amendment violation. *Id.*

After Spears had cited this court's *Beckstrand* ruling in a brief filed in the present case in 2013, the Ninth Circuit reversed this court's *Beckstrand* ruling. The Ninth Circuit held that it was not clearly established that post-conviction overdetention violated the Fourth Amendment. *See Beckstrand v. Read*, 563 Fed. App'x 533, 534 (9th Cir. 2014). Earlier this

year, on appeal after remand, the Ninth Circuit affirmed this court's determination that claims against the state officials in *Beckstrand* were barred by the applicable statute of limitations. The Ninth Circuit noted that, even without a time bar, the officials were entitled to summary judgment on qualified immunity grounds. *See Beckstrand v. Read*, 680 F. App'x 609, 610 (9th Cir. 2017) (citing Haw. Rev. Stat. § 706-671 and *State v. March*, 94 Haw. 250, 11 P.3d 1094 (2000). That decision similarly assures Dydasco of qualified immunity with respect to her alleged conduct.

Importantly, *Beckstrand* cannot support Spears's position because this court's ruling in favor of the plaintiff in that case, which was reversed, turned on the flouting of a court order. No such flouting occurred here. Instead, Dydasco noted that the stipulated orders were incorrect and illegal under Hawaii law. Other Department of Public Safety officials then alerted Judge Cardoza to the presentence credit problem, asking the judge for guidance as to what to do. Ultimately, Judge Cardoza vacated the credit. Unlike the officials in *Beckstrand*, Dydasco did not act on her own.

Not only does Spears fail to overcome the "clearly established" prong of the qualified immunity test, he also fails to demonstrate the factual basis for a constitutional violation.

Judge Cardoza ultimately determined that the Department of Public Safety was correct about the pretrial credit. Rightly or wrongly, it was Judge Cardoza, not Dydasco, who vacated the stipulated orders that gave Spears 73 days of credit. Given that order, which has not been overturned, vacated, or otherwise reversed on appeal, Spears cannot be said to have established that he was actually overdetained by Dydasco.

Even if Judge Cardoza arguably should not have vacated the stipulated orders, Spears makes no showing that it was Dydasco who somehow violated any of Spears's rights. She audited an earlier calculation and told Spears that the judge would be asked for guidance. The absence of a violation of rights in such activity is fatal to all of Spears's constitutional claims based on his alleged overdetention. Spears fails to establish the factual predicate for a constitutional violation by Dydasco. This case is therefore distinguishable from other cases this court has handled in which a prisoner proved actual overdetention. *See, e.g., Itagaki v. Frank*, Civ. No. 09-00110 SOM/LEK, ECF No. 82 (special verdict form indicating that Itagaki had been overdetained and awarding $83,000 for that overdetention).

The court additionally notes that Spears lacks a cognizable claim under § 1983 for any alleged violation of state law, to the extent Spears is relying on § 1983 in that respect.

Although Dydasco was involved in the conduct that Spears complains of, Dydasco cannot violate § 1983 by violating state law. See Leer, 844 F.2d at 632-33 (9th Cir. 1988)(explaining that a cognizable § 1983 violation requires the plaintiff to establish that the defendant's conduct "deprived the claimant of some right, privilege, or immunity protected by the Constitution or the laws of the United States").

> **B.** **Summary Judgment is Granted in Favor of Dydasco With Respect to the State-Law Claims Asserted in the Complaint.**

The court next turns to Spears's state-law claims of false imprisonment and intentional infliction of emotional distress. Dydasco moves for summary judgment with respect to those claims, arguing that, pursuant to *Towse v. State*, 64 Haw. 624, 631 647 P.2d 696, 702 (1982), a nonjudicial government official has a qualified or conditional privilege with respect to tortious actions taken in the performance of his or her public duty. This privilege is the result of the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet allows an injured party to be heard. *See Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974).

The privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself. *Towse,* at 631, 647 P.2d at 702. Because the

privilege was intended to shield all but the most guilty, the Hawaii Supreme Court holds plaintiffs to a higher standard of proof, requiring clear and convincing evidence that a defendant was motivated by malice. *Awakuni v. Awana*, 115 Haw. 126, 140, 165 P.3d 1027, 1041 (2007). Accordingly, for a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. *Id.* at 140, 165 P.3d at 1041; *Towse*, 64 Haw. at 631–33, 647 P.2d at 702–03; *Medeiros*, 55 Haw. at 504–05, 522 P.2d at 1272; *Pogoso v. Sarae*, 138 Haw. 518, 523, 382 P.3d 330, 335 (Ct. App. 2016). When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and that the official must defend the suit the same as any other defendant. *Marshall v. Univ. of Haw.*, 9 Haw. App. 21, 37, 821 P.2d 937, 946 (Ct. App. 1991), *abrogated on other grounds by Hac v. Univ. of Haw.*, 102 Haw. 92, 73 P.3d 46 (2003).

The Hawaii Supreme Court has stated that, in nondefamation cases, courts are to define malice "in its ordinary and ususal sense." *Awakuni*, 115 Haw. at 141, 165 P.3d at 1042. Malice therefore refers to "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of

heart." *Id.* (quotation marks, citation, and alterations omitted).

Dydasco says that she has "never met or spoken with" Spears, and has "never at any time had any malice or ill-will toward [him]." Dydasco Decl. ¶¶ 14-15. There is no evidence in the record to the contrary. Because Spears offers no evidence showing that Dydasco was motivated by malice or an otherwise improper purpose or that Dydasco recklessly disregarded the law, the court grants Dydasco summary judgment with respect to the state law tort claims of false imprisonment and intentional infliction of emotional distress (the Fifth and Six Causes of Action asserted in the Complaint).

## V. ORDER TO SHOW CAUSE WHY ACTION AGAINST READ SHOULD NOT BE DISMISSED.

According to an unexecuted summons filed with the court on July 18, 2012, Read was not served with the Complaint and summons in this case. *See* ECF No. 15. There is no dispute that Read has not been served in the more than 5 years since then, although the court notes that, except for a short period, this case was stayed from October 2013 to June 2017. *See* ECF Nos. 49 and 93.

On June 5, 2017, the court issued a minute order that required Spears to file a status report no later than June 16, 2017, detailing which claims remained against which defendant(s). *See* ECF No. 90. On June 16, 2017, Spears filed a Status Report

that stated, "Thomas L. Reed [sic] and the Dpt. Of Public Safety are no longer parties in this law suit as the Court dismissed them in Summary Judgment Order dated 6-19-13." ECF No. 91, PageID # 635. Of course, the court's previous order only granted summary judgment in favor of Read in his official capacity, leaving the individual capacity claims against him for adjudication. See ECF No. 13.

On June 20, 2017, Dydasco filed a status report in which she called herself "[t]he remaining Defendant." ECF No. 92, PageID # 701. On August 9, 2017, Spears similarly stated, "The persons involved who did not release him included Tani Dydasco, the remaining Defendant," again reasoning that this court had granted summary judgment in favor of Read. ECF No. 97, PageID # 711.

In the court's usual, prehearing inclinations, the court asked Spears to clarify whether he was still asserting claims against Read. At the hearing, Spears indicated that he was asserting claims against Read, but that he had been unable to serve Read because he did not know Read's address. Spears conceded that he did not seek discovery concerning Read's address.

Under Rule 4(m) of the Federal Rules of Civil Procedure, because Spears did not serve Read within 90 days of the filing of the Complaint, this court is to dismiss the action

without prejudice against Read or order that Read be served within a specified time.  The rule requires this court to extend the time for service for an appropriate period if Spears shows good cause for his failure to timely serve the Complaint on Read.

The court therefore orders Spears to show cause why the action should not be dismissed with respect to Read pursuant to Rule 4(m).  No later than November 17, 2017, Spears must file a document explaining the good cause for his failure to timely serve Read or indicating that he is abandoning claims with respect to Read.  In the absence of a demonstration of good cause justifying Spears's failure to timely serve Read, this action will be dismissed with respect to Read given the age of this case and the lack of effort to serve Read, both of which support dismissal rather than a further opportunity to attempt service.

**VI.      CONCLUSION.**

For the foregoing reasons, the court grants Defendant Tani Dydasco's motion for summary judgment.

The only claims left in this case are those asserted against Read, who has not been served with the Complaint and summons in this case.  As required above, no later than November 17, 2017, Spears must demonstrate good cause for his failure to timely serve Read.  Absent such a demonstration, the Complaint

will be dismissed with respect to Read, and judgment shall be entered against Spears and in favor of Defendants.

IT IS SO ORDERED.

Dated:  Honolulu, Hawaii, November 8, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Spears v. State of Hawaii Department of Public Safety*, Civ. No. 12-00218 SOM/RLP;
ORDER GRANTING DEFENDANT TANI DYDASCO'S MOTION FOR SUMMARY JUDGMENT; ORDER TO SHOW
CAUSE WHY ACTION WITH RESPECT TO THOMAS L. READ SHOULD NOT BE DISMISSED